Opinion issued December 22, 2005








     






In The
Court of Appeals
For The
First District of Texas




NOS. 01–05–00871–CV
          01–05–00872–CV




E.V.A., Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the Probate Court
Galveston County, Texas
Trial Court Cause Nos. 2655 and 2655A
 

 

MEMORANDUM OPINION

          In these two accelerated appeals, appellant, E.V.A., raises three issues
challenging the trial court’s separate orders (1) that E.V.A. be involuntarily
committed for temporary inpatient mental health services


 and (2) that she be
administered psychoactive medications.


 E.V.A. contends that the evidence presented
by the State at her commitment hearing is legally and factually insufficient to support
the findings on which the order for temporary inpatient treatment is based. 
Concomitantly, E.V.A. also contends that the trial court’s order to administer
psychoactive medication must be reversed because such an order cannot stand unless
a proper order for inpatient mental health services is also in place.
          We affirm.
Background
          On August 5, 2005, E.V.A. was admitted to the University of Texas Medical
Branch Hospital (“UTMB”). The medical records for that admission indicate that
E.V.A. was brought to UTMB by the Galveston County sheriff’s department because
“she got into an argument [with] a supervisor at work.” 
          On August 22, 2005, Dr. Pasztor signed an application for court-ordered
temporary mental health services, which was filed with the trial court. As applicant,
Dr. Pasztor requested the trial court to involuntarily commit E.V.A. to the Austin
State Hospital for a period not to exceed 90 days. The application was supported by
two certificates of medical examination: one prepared by Dr. Pasztor and one by Dr.
Jon Guidry. Both doctors stated that they had examined E.V.A. and diagnosed her
with bipolar disorder. To support his opinion that E.V.A. needed to be temporarily
committed, Dr. Guidry referred to E.V.A.’s statements that her family wants to kill
her, E.V.A.’s refusal to take her medication, and the “frequent emergency injections”
that E.V.A. had received “for aggression.” In his certificate of medical examination,
Dr. Pasztor cited, inter alia, E.V.A.’s refusal to take her medication. Dr. Pasztor also
wrote that E.V.A. had “induce[d] diarrhea” to “get rid of her meds.”
          E.V.A.’s commitment hearing was held on August 31, 2005. At the conclusion
of the hearing, the trial court, as factfinder, made the following oral findings:
The Court finds that [E.V.A.] is mentally ill. As a result of that mental
illness, she is likely to cause serious harm to others. She is suffering
severe and abnormal mental, emotional, or physical distress and is
experiencing substantial mental or physical deterioration of her ability
to function independently. And she is unable to make a rational and
informed decision as to whether or not to submit to treatment . . . .

As a result, the trial court signed an “Order For Temporary Inpatient Mental Health
Services,” in which the trial court ordered E.V.A. committed to the Austin State
Hospital for a period not to exceed 90 days.
          Immediately following the commitment hearing, the trial court conducted a
hearing on the State’s application to administer psychoactive medication, which had
been filed at the same time as the commitment application. At the conclusion of the
hearing, the court signed an “Order to Administer Psychoactive Medication,”
providing that certain classes of psychoactive medications could be administered to
E.V.A. for the duration of her temporary commitment.
          E.V.A. appeals both the “Order For Temporary Inpatient Mental Health
Services” and the “Order to Administer Psychoactive Medication.”



Order for Temporary Commitment
          In her first two issues, E.V.A. challenges the legal and factual sufficiency of
the evidence supporting the Order For Temporary Inpatient Mental Health Services.
A.      Burden of Proof
          To obtain an order for temporary commitment, the Texas Legislature has
mandated that the State must prove its case by clear and convincing evidence. See
Tex. Health & Safety Code Ann. § 574.034 (Vernon 2003). In this context, “clear
and convincing evidence” means “that measure or degree of proof which will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established.” State v. Addington, 588 S.W.2d 569, 570 (Tex.
1979). Specifically, Health and Safety Code subsection 574.034(a) provides that the
judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services only if the judge or a jury finds, from clear and convincing
evidence, that:
          (1)     the proposed patient is mentally ill; and
          (2)     as a result of that mental illness the proposed patient:
 
(A)is likely to cause serious harm to himself;
 
                    (B)    is likely to cause serious harm to others; or
 
                    (C)    is:
 
(i)suffering severe and abnormal mental, emotional, or
physical distress;
 
(ii)experiencing substantial mental or physical
deterioration of the proposed patient’s ability to
function independently, which is exhibited by the
proposed patient’s inability, except for reasons of
indigence, to provide for the proposed patient’s
basic needs, including food, clothing, health, or
safety; and
 
(iii)unable to make a rational and informed decision as
to whether or not to submit to treatment. 

Tex. Health & Safety Code Ann. § 574.034(a).


          Subsection 574.034(c) requires that, if the judge or a jury finds that the
proposed patient meets the commitment criteria prescribed by subsection (a), the
judge or the jury must specify which criterion listed in subsection (a)(2) forms the
basis for that decision. Id. § 574.034(c). Our review is limited to the criteria actually
identified. See Johnstone v. State, 961 S.W.2d 385, 388 (Tex. App.—Houston [1st
Dist.] 1997, no writ). 
          In this case, the trial court made findings under the second and third criterion. 
See Tex. Health & Safety Code Ann. § 574.034(a)(2)(B), (C)(i)–(iii). That is, the
commitment order reflects that the trial court, as fact finder in this case, found that
E.V.A. is likely to cause serious harm to others and (i) is suffering severe and
abnormal mental, emotional, or physical distress; (ii) is experiencing substantial
mental or physical deterioration of her ability to function independently, which is
exhibited by E.V.A.’s inability, except for reasons of indigence, to provide for her
basic needs, including food, clothing, health, or safety; and (iii) is unable to make a
rational and informed decision as to whether to submit to treatment. See id.
          The Health and Safety Code requires that, to be clear and convincing under
subsection 574.034(a), the evidence must include expert testimony and, unless
waived, evidence of a recent overt act or a continuing pattern of behavior that tends
to confirm:
(1) the likelihood of serious harm to the proposed patient or others; or
(2) the proposed patient’s distress and the deterioration of the proposed
patient’s ability to function.




Id. § 574.034(d). The trial court need not specify which basis for clear and
convincing evidence listed in subsection 574.034(d) supports its subsection
574.034(a) findings. See M.S. v. State, 137 S.W.3d 131, 135 n.5 (Tex.
App.—Houston [1st Dist.] 2004, no pet.). However, the recent overt act or
continuing pattern of behavior proven by the State must relate to the criterion on
which the judgment is based. J.M. v. State, Nos. 01–05–00146–CV,
01–05–00147–CV, 2005 WL 1606931, at *7 (Tex. App.—Houston [1st Dist.] July
7, 2005, no pet.); In re C.O., 65 S.W.3d 175, 181 (Tex. App.—Tyler 2001, no pet). 
          An expert opinion recommending involuntary commitment must be supported
by the factual bases on which it is grounded and not simply recite the statutory
criteria. See K.T. v. State, 68 S.W.3d 887, 893 (Tex. App.—Houston [1st Dist.] 2002,
no pet.); In re Breeden, 4 S.W.3d 782, 784 (Tex. App.—San Antonio 1999, no pet.). 
That is, the expert should describe the patient’s specific behaviors on which his or her
opinion is based. See In re K.D.C., 78 S.W.3d 543, 550 (Tex. App.—Amarillo 2002,
no pet.). 
 
B.      Standards of Review
          When reviewing factual findings required to be made by clear and convincing
evidence, we apply a standard of review that reflects this burden of proof. J.M. v.
State, 2005 WL 1606931, at *5–6 (citing In re J.F.C., 96 S.W.3d 256, 266 (Tex.
2002)). In evaluating the legal sufficiency of the evidence, we review all the
evidence in the light most favorable to the finding to determine whether a reasonable
factfinder could have formed a firm belief or conviction that the finding was true. 
J.F.C., 96 S.W.3d at 266. In doing so, we assume the factfinder resolved disputed
facts in favor of the finding if a reasonable factfinder could do so, and we disregard
all evidence that a reasonable factfinder could have disbelieved or found to have been
incredible. Id. 
          Likewise, the higher burden of proof alters the appellate standard of factual
sufficiency review. J.M., 2005 WL 1606931, at *6 (citing In re C.H., 89 S.W.3d 17,
25–26 (Tex. 2002)). In reviewing the evidence for factual sufficiency under the clear
and convincing standard, we inquire “whether the evidence is such that a factfinder
could reasonably form a firm belief or conviction about the truth of the State’s
allegations.” C.H., 89 S.W.3d at 25. We must consider all the evidence in the record,
both that in support of and contrary to the trial court’s findings. Id. at 27–28. This
Court must give due consideration to evidence that the factfinder could reasonably
have found to be clear and convincing. J.F.C., 96 S.W.3d at 266. We must consider
whether disputed evidence is such that a reasonable trier of fact could not have
reconciled that disputed evidence in favor of its finding. Id.
C.      Legal Sufficiency of Evidence to Support Commitment Order
          E.V.A. does not contest the trial court’s finding that she is mentally ill. Instead,
she contends that the State did not present legally sufficient evidence to show “a
recent overt act” or a “continuing pattern of behavior” that tends to confirm either (1)
the likelihood that E.V.A. would cause serious harm to others or (2) E.V.A.’s distress
and the deterioration of her ability to function to provide for her own basic needs, as
required by subsection 574.034(d). See Tex. Health & Safety Code Ann.
§ 574.034(d). 
          Dr. Guidry, who is board certified in psychiatry, testified for the State at the
commitment hearing. The direct examination of Dr. Guidry contained the following
exchange:
[The State]: Is she likely to cause serious harm to others?
 
[Dr. Guidry]: Yes. 
 
Q. Are you personally aware of any overt act or continuing pattern of
behavior that you can tell us about that tends to confirm that likelihood?
 
A. Since admission she has been resistant to take necessary psychiatric
medications to treat her psychosis. This has been evidenced by
rescinding content for meds, as she remains psychotic. And I witnessed
her threaten a medical student last week around Thursday or Friday. It’s
documented in the medical records, but I don’t have the chart. It was
after psychiatric Miranda was given to her.

          Dr. Guidry also testified that E.V.A. “will continue to deteriorate to the point 
to where there will be an active aggression, in my professional opinion.” According
to Dr. Guidry, such deterioration would compromise the safety of others. In addition,
the doctor also testified that E.V.A. could not make a rational and informed decisions
as to whether she should submit to treatment. To illustrate, Dr. Guidry explained that
“E.V.A. told me repeatedly she only wants to take the white pills. It’s more based on
color or class or indication or target symptoms.” 
          When asked whether there were “any overt acts or continuing patterns of
behavior over and above what you have already mentioned that tend to confirm her
distress and deterioration,” Dr. Guidry responded as follows:
Medication refusal, as discussed; continued psychosis, as discussed; 
continued need for emergency provision of psychotropic or
antipsychotic medications for aggression and hostility, as evidence by
documentation in the medical record from provision of I M shots for
verbal agitation or behaviors consistent with an eminent [sic] overt act
and continues to be given medications to prevent such overt act. 

          The State asked Dr. Guidry if the injections to which he referred were
“involuntary injections.” Dr. Guidry responded affirmatively and explained as
follows:
The way that I have written the record, after she rescinded, either
verbally or in writing, I stopped medications that were provided on an
as needed basis for anxiety or irritability and I wrote it for aggression
and hostility as an emergency exception to informed consent. And the
way they do things in psychiatry is an emergency exception is to prevent
harm or injury that we feel is imminent and we see those behaviors that
are noted, and then those medications are given.

E.V.A.’s UTMB medical records, which were admitted into evidence at the
commitment hearing, reflect that, during the three weeks preceding the commitment
hearing, E.V.A. had received injections on several occasions when she exhibited
aggressive behavior. 
          E.V.A. contends that Dr. Guidry’s testimony regarding her refusal to take
medication and her continued psychosis is legally insufficient to support the trial
court’s findings in support of temporary commitment. E.V.A. does not acknowledge
that Dr. Guidry also testified that she had threatened a medical student and required
involuntary injections for her aggressive behavior during her hospitalization. Dr.
Guidry’s testimony regarding E.V.A.’s aggressive behavior and the resulting
injections is corroborated by her medical records. 
          The UTMB medical records also indicate that E.V.A. made verbal threats. On
August 20, 2005, E.V.A. told the staff “I’m gonna hurt you,” when she was prevented
from leaving the hospital unit. On the evening of August 29, 2005, two days before
the commitment hearing, E.V.A. stated that she “would ‘kill’ someone.” On that date,
her medical records indicate that she was “medicated to [decrease] her uncontrolled
aggressive behavior.” On each of these dates, the medical records also indicate that
E.V.A. was given an injection, which on August 20th was noted as being “effective.” 
          Helen May Flanders, a therapeutic recreation specialist with the Department
of Rehabilitation Services, also testified for the State. Flanders related that E.V.A.
is one of her “clients.” Flanders responded affirmatively when asked if she had
witnessed E.V.A. exhibit “aggressive tendencies.” In this regard, the following
exchange occurred during direct examination:
[Flanders]: Last Friday, on August 26th, she became agitated and
aggressive. While rounding up for my exercise room, I attempted to
escort her back to the unit, at which time she started placing her hand
and waving her hands in my face and made contact with my nose and
then was escorted farther into the unit. And at that point that was my
last contact.
 
Q. [The State]: Okay. Did you feel threatened by this? 
 
A. I felt very threatened, yes. Had I not stepped backwards when she
waved her hand one more time, she probably would have knocked my
glasses off my face. 
 
Q. So her hand moved and struck you in the nose?
 
A. Yes, sir.
During cross-examination, when asked whether E.V.A.’s act of striking her was
intentional or an accident, Flanders testified that E.V.A “was intentionally trying to
strike me.” 
          On appeal, E.V.A. contends that, because the incident with Flanders had
occurred five days before the commitment hearing, “it was not a recent overt act as
required by law.” E.V.A. neither elaborates on nor offers authority for this
contention. Given the common meaning of the word “recent,” we disagree that an
assaultive act committed five days before a commitment hearing is not a “recent”
overt act.


 
          To support commitment, a threat of harm to others must be substantial and
based on actual dangerous behavior manifested by some overt act or threats in the
recent past. See Taylor v. State, 671 S.W.2d 535, 538 (Tex. App.—Houston [1st
Dist.] 1983, no writ). The State in this case presented such evidence. 
          We conclude that the State introduced legally sufficient evidence to prove an
overt act or continuing pattern of behavior by E.V.A. that tended to confirm the
likelihood of serious harm to others. That is, considering the evidence as we must,
we conclude that a reasonable trier of fact could have formed a firm belief or
conviction that E.V.A. was likely to cause serious harm to others. See Tex. Health
& Safety Code Ann. § 574.034(a)(2)(B); see also id. § 574.034(d). Accordingly,
we hold that the evidence is legally sufficient to support the trial court’s Order For
Temporary Inpatient Mental Health Services. 
          We overrule E.V.A.’s first issue.
D.      Factual Sufficiency of Evidence to Support Commitment Order
          In addressing E.V.A.’s factual sufficiency complaint, we give due
consideration to evidence that the factfinder could reasonably have found to be clear
and convincing. C.H., 89 S.W.3d at 25. E.V.A. cites to Flanders’s testimony, given
during cross-examination, that E.V.A. was verbally aggressive during “group time,”
but that such behavior was “not unusual for her clients.” As discussed, evidence was
also presented that E.V.A. had threatened medical students the previous week, had
verbally threatened the UTMB staff, had exhibited aggressive behavior requiring
injections, and had intentionally struck Flanders in the nose five days earlier. 
          In light of the entire record, we conclude that the trial court could have
reasonably formed a firm belief or conviction that E.V.A. was likely to cause harm
to others.


 Accordingly, we hold that the evidence is factually sufficient to support
the trial court’s Order For Temporary Inpatient Mental Health Services. 
          We overrule E.V.A.’s second issue.
Order to Administer Psychoactive Medication
          In her third issue, E.V.A. contends that, “[b]ecause there is insufficient
evidence to support the court’s order for temporary inpatient mental services [,]there
is no basis for the court’s order to administer psychoactive medication.” We have
held that the evidence is legally and factually sufficient to support the Order For
Temporary Inpatient Mental Health Services. Thus, we overrule E.V.A.’s third issue.
                                                         Conclusion
          We affirm the Order For Temporary Inpatient Mental Health Services and the
Order to Administer Psychoactive Medication signed by the trial court.




                                                   Laura Carter Higley
                                                   Justice

Panel consists of Justices Nuchia, Jennings, and Higley.